**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ESTATE OF KATELYN HICKS, DECEASED, through Katelyn Hicks' Personal Representative, William Dean Hicks** | * * * * | **PLAINTIFF** |
| | * | **CASE NO.:1:11cv00594-CG-N** |
| **VERSUS** | * * | |
| **MATHEW C. WALLACK, M.D.** | * | **DEFENDANT** |

**MEMORANDUM IN OPPOSITION TO DEFENDANT MATHEW C. WALLACK'S MOTION TO DISMISS FOR LACK OF *IN PERSONAM* JURISDICTION**

**NOW INTO COURT**, comes, through Katelyn Hicks' Personal Representative – William Dean Hicks, the Estate of Katelyn Hicks, deceased (hereinafter collectively "Plaintiff") to submit the instant memorandum in opposition to Defendant Mathew C. Wallack's "Motion to Dismiss for Lack of *In Personam* Jurisdiction.

As demonstrated below the known personal contacts Dr. Wallack has with the State of Alabama, are sufficient to exercise *in personam* jurisdiction over him in this matter.

Alternatively, should this Court determine that the known contacts are not sufficient, then Plaintiff requests that this Court exercise its sound discretion to allow limited discovery on this issue before rendering a decision.

## I. Background

This case arises out of Dr. Wallack – an Alabama licensed physician's - most liberal practice of prescribing pain medication to Katelyn Hicks an Alabama citizen, at a location less than thirty (30) minutes away from Alabama's border. Dr. Wallack's careless drug prescribing practices led to Katelyn Hicks' premature death in Alabama at the young age of twenty-one (21).

Dr. Wallack operates a facility thirty (30) miles away from the Alabama border. Previously, Dr. Wallack applied for and was granted license number MD.29202 to practice medicine in Alabama.[1] Significantly, Dr. Wallack renewed his Alabama medical license again on December 18, 2008.

Katelyn Hicks, prior to her death, resided in Mobile, Alabama.[2] Before Katelyn Hicks began consulting with Dr. Wallack, she was treated by a pain management specialist in Birmingham, Alabama.[3] However the distance between Birmingham and Mobile caused Plaintiff to search for an Alabama licensed doctor in greater proximity to Katelyn Hicks' residence.[4] Plaintiff conducted preliminary research on the internet and learned about Dr. Wallack an Alabama licensed doctor located within thirty (30) miles of Mobile, Alabama.[5]

On September 21, 2009, Dr. Wallack began treating Katelyn Hicks. That day he performed a nerve block on her. Subsequently, he had her return to his office across state lines to continue her treatment.

On October 1, 2009, Dr. Wallack applied a first set of cervical epidural injections to Katelyn Hicks.[6] On October 9, 2009, Dr. Wallack applied a second set of cervical epidural injections to Katelyn Hicks.[7] On October 14, 2009, Dr. Wallack applied a third set of cervical epidural injections to Katelyn Hicks.[8] On October 19, 2009, Dr. Wallack applied a fourth set of cervical epidural injections to Katelyn Hicks.[9]

---

[1] *See*, Exhibit "B."
[2] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[3] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[4] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[5] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[6] ECF #10.
[7] ECF #10.
[8] ECF #10.
[9] ECF #10.

At every visit Plaintiff accompanied Katelyn Hicks.[10] He personally informed Dr. Wallack that Katelyn was a resident of Alabama and that any prescriptions would be filled in Alabama.[11] While accompanying his daughter, Plaintiff conversed with several of Dr. Wallack's patient's in the waiting room who advised that they were also Alabama residents.[12]

During the October 19, 2009, visit Dr. Wallack negligently prescribed both Duragesic patches and Methodone to Katelyn Hicks, a combination of drugs which directly caused her death.[13]

On October 26, 2009, twenty-one (21) year old Katelyn Hicks – while at her home in Alabama - ingested the prescribed medication. That same day she died from a mixed drug overdose.[14]

**II. Key Jurisdictional Facts**

A. Dr. Wallack holds a license to practice medicine in Alabama.

B. Dr. Wallack renewed his medical license to practice medicine in Alabama in 2008.

C. Dr. Wallack's Alabama medical license is a property right which bestows upon him all the protections Alabama provides to doctors.

D. Dr. Wallack's clinic is located 30 miles from the Alabama border.

E. Plaintiff selected Dr. Wallack because of: (1) his Alabama license; and proximity to his Alabama residence.

F. Dr. Wallack agreed to continuously treat Katelyn Hicks after he knew she was an Alabama resident.

---

[10] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[11] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[12] *See*, Exhibit "A" – Affidavit of William Dean Hicks.
[13] ECF #1; ECF #10
[14] ECF #1.

    G. Dr. Wallack provides medical care to Alabama residents.

    H. Katelyn Hicks filled Dr. Wallack's prescriptions in Alabama, and Dr. Wallack knew this.

    I. Katelyn Hicks took the medication prescribed by Dr. Wallack in Alabama and Dr. Wallack knew this.

    J. Dr. Wallack cannot deny that he has derived personal revenue from Alabama and/or its residents.

    K. On October 26, 2009, Katelyn Hicks suffered and died in Mobile, Alabama, as a result of taking medications prescribed by Dr. Wallack, giving rise to the present Alabama wrongful death action.

## III. Law & Analysis

### A. Legal Standard

A motion to dismiss for lack or personal jurisdiction should be treated with caution and denied if the plaintiff alleges sufficient facts in his complaint to support a reasonable inference that the defendant is subject to the court's jurisdiction. *Bracewell v. Niholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). Absent an evidentiary hearing, Plaintiff need only establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *HomeBingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1241 (S.D. Ala. 2006)(*citing, Meirer ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). The Court is constrained to: (1) accept uncontroverted allegations in the Complaint as true; and (2) to resolve factual disputes in Plaintiff's favor. *Id.*

**B. Personal Jurisdiction**

Dr. Wallack cannot evade Alabama's jurisdiction merely because he lured Alabama residents 30 miles into Mississippi. *See, Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)("we have consistently rejected the notion than an absence of physical contacts can defeat personal jurisdiction).

The analytical steps necessary to determine personal jurisdiction are: (1) whether the forum's long-arm statute allows for the exercise of personal jurisdiction; and (2) whether sufficient minimum contacts exist to satisfy the Due Process Clause. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)(*relying on*, *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Thus, if both prongs are satisfied Dr. Wallack can be made accountable, for his actions including Katelyn Hicks' death, before the State of Alabama. *See, International Shoe Co. v. Washington*, 326 U.S. at 316.

**1.Alabama's Long-Arm Statute**

Alabama's long-arm statute allows for the exercise of personal jurisdiction to the fullest extent allowed by the Due Process Clause. It provides in pertinent part:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States…

Ala. R. Civ. P. 4.2(b); *Monilla v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000). Therefore, the two-prong analysis collapses into one. *See, Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F.Supp.2d 1293, 1296 (S.D. Ala. 2003).

**2.Constitutional Due Process Analysis**

"[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp.*, 471 U.S. at 474. Hence, Dr. Wallack should not be allowed to treat Alabama patients, causing injury and death to them in Alabama, while simultaneously hiding behind a political boundary in order to evade Alabama's jurisdiction.

Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident defendant that: (1) has "certain minimum contacts with the forum; (2) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

**i. Minimum Contacts Analysis**

Dr. Wallack having "purposefully derived benefits" from his interstate activities it is unfair to allow him to escape having to account in Alabama for the consequences that arise proximately from his activities. *See, Burger King Corp. v. Rudzewicz*, 471 U.S. at 477.

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp.*, 471 U.S. at 472; *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977). Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King Corp.*, 471 U.S. at 474; *World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 297 (1980).

In the context of doctor-patient litigation, special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when he has purposefully availed himself of

the privileges of conducting activities within the forum states. However, such rules are still cognizant of the realities of interstate commerce.

**a. Dr. Wallack Has Created "Continuous Obligations" with Alabama Residents.**

Dr. Wallack's doctor-patient obligations with Alabama residents provide "minimum contacts" with the forum.

Where a non-resident defendant creates "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there. *See, Travelers Health Assn. v. Virginia*, 339 U.S. 643, 648 (1950); *see, McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957). Moreover, because the nonresident defendant's activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require said defendant to submit to the burdens of litigations in that forum as well. *Burger King Corp.*, 471 U.S. at 476**.**

The doctor-patient relation is a consensual one wherein the patient knowingly seeks the assistance of a physician and the physician accepts her as a patient. *Oliver v. Brock*, 342 So.2d 1, 3 (Ala. 1976). The voluntary acceptance of the doctor-patient relationship creates a prima facie presumption of a contractual relationship between them. *Id.*

In *Kennedy v. Freeman*, the Tenth Circuit Court of Appeal rejected the argument that absent explicit solicitation no jurisdiction may be exercised on a nonresident doctor. 919 F.2d 126 (10th Cir. 1990). The *Kennedy* defendant – a Texas doctor - voluntarily received a skin sample from plaintiff's doctor in Oklahoma. *Id.* at 128. Defendant examined the sample and provided plaintiff's doctor with a report, which lead to a misdiagnosis. *Id.* The court held that defendant's actions knowing that the services rendered would be the basis for plaintiff's medical care were sufficient to allow the exercise of personal jurisdiction in Oklahoma. *Id.* at 129.

Similarly to the doctor in *Kennedy*, Dr. Wallack voluntarily entered into the doctor-patient relationship with Katelyn Hicks an Alabama resident. Dr. Wallack by voluntarily entering into a doctor-patient relationship with Alabama residents such as Katelyn Hicks engaged in continuous obligations between himself and the State of Alabama. *See generally*, *Oliver*, 342 So.2d at 3. Additionally, Dr. Wallack was aware that he would be responsible for Katelyn Hick's continuous medical care and well-being. Moreover Dr. Wallack was also aware that Katelyn Hicks was filling her prescriptions and taking said medications in the State of Alabama. Hence, he knew that any potential problems or injuries associated with the prescribed medications would be realized and/or treated in Alabama.

Accordingly, Dr. Wallack's continuous obligations with Alabama residents provide him "fair warning" that Alabama might exercise *in personam* over him.

**b. Dr. Wallack Has Purposefully Directed his Actions Towards Alabama**

Dr. Wallack's conduct, including his clinic's geographic location, is sufficiently directed at Alabama to establish minimum contacts.

Where a nonresident defendant "purposefully directs" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities, the exercise of jurisdiction does not offend Due Process. *See, Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774.

For example, in *Worthy v. Bartley*, an Alabama federal court held that a Georgia doctor was subject to jurisdiction in Alabama, for an action arising out of a surgery performed in Georgia upon an Alabama resident. 307 F.Supp. 2d 1244 (M.D. Ala. 2004). The *Worthy*, defendant doctor had no license to practice medicine in Alabama, did not have an office in Alabama, and had no employees in Alabama. *Id.*at 1246. However, the defendant's office was

located "across the river" from Alabama and the defendant agreed to treat an Alabama resident. *Id.* Relying on *Kennedy, supra,* Chief Judge Albritton noted that defendant derived sufficient business from Alabama residents to be subject to personal jurisdiction in Alabama. *Id.* at 1259.

Similarly, in *Cubbage v. Merchant*, the Ninth Circuit Court of Appeal rejected the impenetrable borders argument set forth by Dr. Wallack, in his motion. 744 F.2d 665 (9th Cir. 1984). The *Cubbage* defendants did not hold licenses to practice in California nor did they treat patients in California. *Id.* Still, the court held that commerce derived through geographic proximity created sufficient contacts between a group of medical providers in Arizona and the State of California. *Id.* at 670. Specifically, the court noted,"[u]nlike the situation in *World-Wide Volkswagen*,…[medical providers] were located near the border of the forum state and thus rendition of services to California was not an "isolated occurrence." *Id.*

The present situation is analytically parallel to that in *Worthy*, where the defendant doctor used the acceptance of Alabama Blue Cross Blue Shield to attract Alabama residents to his clinic. Likewise, Dr. Wallack's license to practice medicine in Alabama provides residents of said forum with the peace of mind that their medical care meets the standards they would expect form an Alabama doctor. Having not been able to conduct discovery Plaintiff cannot allege that Dr. Wallack has accepted Alabama Blue Cross Blue Shield or any other type of Alabama insurance. However it is not unlikely. Nevertheless, holding a license to practice medicine in Alabama serves the same purpose as accepting Alabama insurance, to encourage Alabama residents into engaging in transactions with the defendant. In fact, Plaintiff selected Dr. Wallack because he had an Alabama medical license.

Additionally, in light of Dr. Wallack's geographic proximity to Alabama, less than thirty (30) miles, from the State border he has established minimum contacts with the forum. In fact

Plaintiff selected Dr. Wallack because of the proximity to his residence in Alabama. The geographic issue was addressed in *Worthy* and *Cubbage*. Unlike Dr. Wallack, the defendants in *Worthy* and in *Cubbage*, did not have licenses to practice medicine in the forum state. Nevertheless, in both of those cases the exercise of jurisdiction was found to be consistent with the United States Constitution. It is undeniable that having an office thirty (30) miles away from Alabama, Dr. Wallack has treated several Alabama residents including Katelyn Hicks. Having not been able to conduct discovery in this matter Plaintiff cannot allege the specific number of Alabama residents treated by Dr. Wallack. In *Cubbage*, the court's reasoning was founded upon the notion that the exercise of jurisdiction did not arise from a single occurrence, as it did in *World-Wide Volkswagen*. Similarly, Dr. Wallack by his assertion treated Katelyn Hicks on at least five (5) occasions.

Thus, Dr. Wallack's purposefully directed actions towards Alabama provide him "fair warning" that Alabama might exercise *in personam* over him.

**c. Dr. Wallack Has Purposefully Availed Himself of the Protections and Benefits of Alabama**

Dr. Wallack, by applying for and being granted a license to practice medicine in Alabama has sufficiently availed himself of the protection of Alabama to establish minimum contacts.

In relation to "purposeful availment" jurists have traditionally relied on the reasoning of *Hanson v. Denckla*:

> the application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws

357 U.S. 235, 253 (1958).

It is analytically disingenuous for Dr. Wallack to contend that in-spite of possessing a license to practice medicine in Alabama and renewing that license in 2008, he has not availed himself of the protections of the State of Alabama. In Alabama, medical licenses are valuable property rights. *Katz v. Alabama State bd. Of Med. Exam'rs*, 351 So.2d 890 (Ala. 1977). Alabama does not randomly hand out licenses to practice medicine. Dr. Wallack had to apply to the Alabama Board of Medical examiners for the license. Having a license to practice medicine in Alabama provides Dr. Wallack all of the protections and rights given to physicians by Alabama. *See, Ex parte Medical Licensure Com'n of Alabama*, 13 So.3d 397, 406 (Civ. App. 2008). It also provides him the ability to attract business from Alabama residents. As noted earlier, Plaintiff selected Dr. Wallack because of his Alabama license and proximity to the State of Alabama. Additionally the instant action arises out of the care provided to Katelyn Hicks, an Alabama resident who dies in Alabama.

Thus, Dr. Wallack's voluntary availment of the protections of Alabama law provides "fair warning" that Alabama might exercise *in personam* over him.

      **d.   The Totality of Dr. Wallack's Conduct Makes it "Foreseeable" that He Would be Haled into Court in Alabama**

Each of the afore mentioned conducts by Dr. Wallack provides the basis for "minimum contacts" between him and Alabama. However, when viewed *in globo* the conducts reveal almost "systematic and continuous" contacts between himself and Alabama.

"[T]he foreseeability that is critical to due process analysis…is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

In *Cooley v. Preiser*, No. 93-0024-B-S, 1993 U.S. Dist. LEXIS 6760 (S.D. Ala. 1993) and *Elliot v. Van Kleef*, 830 So.2d 726 (Ala. 2002), relied on by Dr. Wallack, the court did not exercise personal jurisdiction when: (1) the defendant-attorneys did not hold a license to practice in Alabama; and (2) the defendants were retained to address the plaintiff's legal issues in a separate jurisdiction.

In the instant matter, the exercise of jurisdiction by this Court over Dr. Wallack would not be the result of a single fortuitous contact with Alabama or the unilateral activity of a third-party. *See, Keeton Hustler Magazine, Inc.*, 465 US, 774: *Helicopteros Nacionales de Colombia*, 466 U.S.at 417. This is not a case of a single isolated medical consult subjecting a nonresident doctor to jurisdiction in an unexpected forum. Katelyn Hicks did not subsequently move from Mississippi to Alabama, she was always a resident of Alabama. *See*, *McAndrew v. Burnett*, 374 F.Supp. 460 (M.D. Penn. 1974) (no jurisdiction in Pennsylvania over New York surgeon where alleged injury occurred in New York and decedent subsequently moved to Pennsylvania).

Unlike, the defendants in *Cooley* and *Elliot*, Dr. Wallack holds a license to practice medicine in the Alabama. Additionally, a cognizable distinction exists between retaining an attorney to provide legal services in a specific jurisdiction and engaging a doctor to provide medical services. The latter is indivisible across state lines.

Further, as recognized in *World-Wide Volkswagen*, the purpose of the Due Process clause is to allow a nonresident to curtail its actions in order to avoid being subject to jurisdiction in unanticipated venues. Had Dr. Wallack, so desired he could have elected not to: (1) treat Alabama residents in his office; (2) prescribe medications which he knew would be filled in Alabama; (3) prescribe medications which he knew would be ingested in Alabama; and (4) prescribe medications whose side effects would be suffered in Alabama.

Therefore, Dr. Wallack through his explicit and voluntary conduct has established sufficient "minimum contacts" with Alabama; to reasonable expect to be haled into court in Alabama.

**ii. Fair Play & Substantial Justice Analysis**

An analysis into the "traditional notions of fair play and substantial justice" enhances the reasonableness of exercising *in personam* jurisdiction over Dr. Wallack.

The symbiotic relationship between "minimum contacts" and the "traditional notions of fair play and substantial justice" yield that upon a lesser showing of minimum contacts, than otherwise required, the *Burger King* factors may serve to establish the reasonableness of exercising personal jurisdiction over a nonresident defendant. *See*, *Burger King Corp.,* 471 U.S.at 477. ("a nonresident defendant attempting to evade the court's jurisdiction must, 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable').

To determine, whether the assertion of personal jurisdiction would comport with traditional notions of "fair play" and "substantial justice" our established jurisprudence turns to the *Burger King* factors, where the court noted:

> Thus courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)(*citing*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

**a. The Burden on the Defendant**

Dr. Wallack cannot demonstrate a compelling reason why defending a lawsuit in a forum less than 30 minutes away from his clinic is an undue burden on him. In *Burger King*, the court noted that, "modern transportation and communications have made it much less burdensome for a party sued to defend himself…" 471 U.S. at 474. Subsequently, in *Hodges v. Furlong*, this Court held that a Florida defendant's burden of appearing in the Southern District of Alabama was not great. 883 F. Supp. 1524 (S.D. Ala. 1995). It logically follows that Dr. Wallack's burden for defending the instant action in the Southern District of Alabama cannot make the exercise of jurisdiction unreasonable.

**b. The Forum State's Interest in Adjudicating the Dispute**

The State of Alabama has an interest in adjudicating a dispute arising from the death of one of its citizens, in Alabama, and as a result of the care provided by a doctor licensed in Alabama, who prescribed medication to be filled and ingested in Alabama. In *McGee v. International Life Insurance Co.*, the court noted that, "[a] State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." 471 U.S. at 223. This matter is riddled with connections to Alabama: (1) Plaintiff is a resident of Alabama; (2) Katelyn Hicks, now deceased, was a resident of Alabama; (3) the medications were filled and taken in Alabama; (4) the injury occurred in Alabama; (5) the injury was caused by a doctor licensed by Alabama; and (6) having a license to practice medicine in Alabama defendant can continue to treat Alabama residents. Moreover, Alabama has a substantial interest in having its wrongful death actions applied to its own citizens who die in the State of Alabama. It follows that no other forum can have a greater interest in adjudicating this

action than Alabama. This specific factor alone demosntrates the reasonableness of exercising *in perosnam* jurisdiction over Dr. Wallack.

**c. The Plaintiff's Interest in Obtaining Convenient and Effective Relief**

Traditionally, this factor is concerned with the plaintiff's inability to call witnesses located beyond the court's subpoena power. *Coastal Builders Inc. v. Ficon Fabricators, Inc. *5.* 2005 WL 1005135 (S.D. Ala. 2005), --F.Supp.2d –. Implicitly, it strengthens the argument in favor of the exercise of personal jurisdiction. *Id.* In the instant matter, this element is irrelevant as there are a limited number of witnesses and all are located within a 100 mile radius.

**d. The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies**

No compelling reason exists why prosecuting the instant matter in Alabama would undermine an efficient resolution. Generally, this factor considers the judicial system's interest in avoiding duplicative litigation. *Molina v. Merritt & Furman*, 207 F.3d 1351 (11th Cir. 2000). However, some jurisprudence suggests that a court sitting in the place of injury occurred is ordinarily the most efficient forum, because that court is most competent at interpreting the applicable law. *See, Raffaele v. Cognie Generale Maritime*, 707 F.2d 395, 309 (9th Cir, 1986). This is especially true where Alabama courts have much more experience interpreting Alabama's unique wrongful death statute.[15]

In this instance there is no risk of multiple lawsuits. While Dr. Wallack has pending criminal charges in Mississippi that is not the risk envisioned by the rule. Additionally, Katelyn Hicks filled Dr. Wallack's prescriptions at a pharmacy in Alabama. She ingested the medication

[15] Unlike most other jurisdictions the Alabama wrongful death statute only provides for punitive damages and does not contemplate compensatory damages. *See*, *King v. Nat'l Spa and Pool Institute*, 607 So.2d 1241 (Ala. 1992)("the Wrongful Death Act provides only for punitive damages, and compensation is not a factor in a wrongful death claim.")

in Alabama and died in Alabama. Hence, the lion's share of the actions including all of Plaintiff's injuries occurred in Alabama. It logically follows that Alabama law should apply and that trying the matter in this Court would produce the most efficient resolution to the controversy.

**e. The Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies**

Dr. Wallack has not set forth evidence or argued that this lawsuit implicates Mississippi's "fundamental social policies." Given that Mississippi's only connection with this cause of action is the fortuitous thirty (30) miles between said State and Alabama, it is unlikely that a substantial social policy in favor of adjudicating the matter in Mississippi exists. *See*, *Coastal Builders, Inc. v. Ficon Fabricators, Inc.*, 2005 WL 1005135 (S.D. Ala. 2005), --F.Supp.2d –.

**C. Alternative Request for Evidentiary Hearing**

Alternatively, should this Court determine that the known contacts set forth above are insufficient to establish personal jurisdiction over Dr. Wallack, Plaintiff requests leave to conduct limited discovery from Dr. Wallack to further flesh out the number, nature, and extent of his contacts with the State of Alabama. For instance, undersigned counsel has reason to believe that Dr. Wallack consistently provides medical care to Alabama residents and receives Alabama compensation for his service.

Notwithstanding Plaintiff's reasonable suspicion Federal privacy laws such as HIPAA, have prevented Plaintiff from being able to obtain any information regarding: (1) the residence of Dr. Wallack's patients; (2) whether Dr. Wallack accepts any Alabama insurance; and (3) whether Dr. Wallack has submitted claims for Alabama Medicare and/or Medicaid reimbursement.

**IV. Conclusion**

WHEREFORE, Dr. Wallack has sufficient minimum contacts with Alabama that the exercise of personal jurisdiction over him does not offend traditional notions of fair play and substantial justice. Dr. Wallack, through his Alabama medical license and proximity to the State's border, knowingly reached out of Mississippi, purposefully directing his actions towards Alabama in an effort to lure residents such as Katelyn Hicks across the border. Those same efforts led to Katelyn Hicks death and the present litigation. Neither has Dr. Wallack demonstrated a compelling case for the proposition that the exercise of jurisdiction over him would render jurisdiction unreasonable.

**RESPECTFULLY SUBMITTED**, this the _12th_ day of December, 2011.

*/s/ Ian A. Brendel*
Ian A. Brendel
The Cochran Firm – Metairie, LLC
One Galleria Blvd., Suite 2130
Metairie, Louisiana 70001
Phone: 504.309.5000
Fax: 504.309.5007
Email: ibrendel@cochranfirm.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I, IAN A. BRENDEL, have this date, caused a copy of the same to be filed electronically via CM/ECF, and all parties have been notified of a consequence, including:

H. Benjamin Mullen
Jessica B. McNeel
Byran, Nelson, Schroeder, Catigliola & Banahan, PLLC
1103 Jackson Avenue

Pascagoula, MS 39568

      **SO CERTIFIED**, this the _12th_ day of December, 2011

                                         */s/ Ian A. Brendel*
                                         IAN A. BRENDEL