**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**ESTATE OF KATELYN HICKS,
DECEASED, through Katelyn Hicks'
Personal Representative, William
Dean Hicks**                                                                                 **PLAINTIFF**

**VERSUS**                                                                      **CAUSE NO. 1:11cv00594-CG-N**

**MATHEW C. WALLACK, M.D.**                                                            **DEFENDANT**

**DEFENDANT'S RESPONSE AND MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S STATEMENT OF OBJECTION TO MAGISTRATE JUDGE'S
RECOMMENDATION [DOC. 22]**

COMES NOW the Defendant, MATHEW C. WALLACK, M.D. (hereinafter "Dr. Wallack"), by and through his counsel of record and files this his Response and Memorandum in Opposition to the Plaintiff's Statement of Objection to Magistrate Judge's Recommendation [Doc. 22] and for cause would show unto the Court as follows, to-wit:

**I. Introduction**

At the outset, Dr. Wallack submits that the Plaintiff's Objection to the Magistrate Judge's Recommendation (hereinafter "Objection") amounts to little more than a rehash of his previous opposition to Dr. Wallack's Motion to Dismiss and accompanying Memorandum. The Plaintiff continues to assert the same non-determinative "facts" in an effort to create a basis for personal jurisdiction for the Court over Dr. Wallack where none exists. To the extent that Dr. Wallack has already addressed these matters previously in his Reply Memorandum to Plaintiff's Memorandum in Opposition to Dr. Wallack's Motion to Dismiss [Doc. 15], he hereby incorporates those same arguments herein by reference and for the sake of brevity will not restate

1

them in this Response.

With reference to the Plaintiff's objections and "additional evidence" proffered, Dr. Wallack will address each as itemized in the Plaintiff's Objection [Doc. 22].

## I. Objection 1–Lack of Evidentiary Hearing

The decision regarding whether or not an evidentiary hearing is conducted rests solely within the sound discretion of the Court whether requested by a party or not. L.U.Civ.R. 7(b)(6). As the Court correctly observed in its Report and Recommendation, neither party requested an evidentiary hearing. [Doc. 19] at p. 5, fn. 2. Further, the Court opined that the record was sufficient upon which to rule without a hearing. *Id.* Plaintiff now contends in his Objection that he in fact did request an evidentiary hearing quoting Subsection C contained on page 16 of his Memorandum in Opposition to the Defendant's Motion to Dismiss [Doc. 15]. Yet, a close reading of the quoted section set forth in Plaintiff's Objection [Doc. 22] at p. 9 reveals that, the title of the subsection notwithstanding, what the Plaintiff actually requested was an opportunity to conduct limited discovery, not an evidentiary hearing. *Id.* Thus, Plaintiff's objection that the Court entered its Report and Recommendation without conducting an evidentiary hearing (and the Court's finding that none was requested) is both misplaced and based on an inaccurate representation of the true circumstances. Plaintiff did not request an evidentiary hearing as is plainly evidenced by the language of his own pleading. [Doc. 15[ at p. 16.

Regardless, even if the Court determines that Plaintiff did request an evidentiary hearing based solely on the title of Subsection C of his Memorandum in Opposition [Doc. 15], the Court may still exercise its discretion and decide the matter without an evidentiary hearing (which it

appears that it did just that). L.U.Civ.R. 7(b)(6). Objection 1 should be overruled.

It is worthy of note that Plaintiff glaringly misquotes and misrepresents the language of the Court's Report and Recommendation by stating that the Report found "that 'acceptance of Alabama insurance...[would] subject a non-resident physician Defendant to personal jurisdiction in Alabama'" and then by citing to "[ECF #19, Pp. 14 *citing Worthy v. Bartley....*]" (sic). *See* [Doc. 22] at p.10. Nowhere in the Court's Report and Recommendation does the Court make any such finding. First, the Court simply quoted direct language from the *Worthy* case as part of its analysis. Second, the ellipsis and insertion of the bracketed word "[would]" is an absolute mischaracterization of the holding in *Worthy* and the Court's own observation pertaining thereto, a mischaracterization so serious that it wholly misrepresents Alabama law espoused by the *Worthy* opinion. The entire quote from *Worthy* is "**the advertising in this case, including pointing out the Defendants'** acceptance of Alabama insurance**, was a purposeful availment of business in Alabama and is sufficient to** subject **the** non-resident physician Defendant**s** to personal jurisdiction in Alabama." *Worthy*, 307 F.Supp.2d at 1248 (emphasis added to the words omitted by Plaintiff in his Objection). It was the advertising aimed at Alabama residents which included the incentive that Alabama insurance was accepted that led the *Worthy* court to determine that it had personal jurisdiction over the non-resident defendants, not the acceptance of the Alabama insurance itself. Such overt misrepresentations of case law and the Court's own Report should be admonished and are reflective of Plaintiff's efforts to support his contention simply out of whole cloth.

That stated, the Court correctly found in its Report and Recommendation that no evidence existed in this case that Dr. Wallack advertises the acceptance of Alabama insurance to

attract Alabama residents to his clinic. Likewise, in his Objection, Plaintiff offers no new evidence to contradict that finding. Even if Dr. Wallack has other patients who happen to live in Alabama, unless Plaintiff can demonstrate (which he has not done and cannot do) that Dr. Wallack aimed advertisements with incentives to attract them to his clinic, those patients were at Dr. Wallack's clinic as a result of their own actions, not those of Dr. Wallack. Their presence as patients makes no difference to the analysis.

The Court should disregard the Plaintiff's argument in this regard and overrule Objection 1.

## II. Objection 2–The Court's Finding that Alabama's Involvement Was Merely Fortuitous and the Result of Plaintiff's Own Unilateral Actions

Plaintiff's next tactic is to offer four (4) "additional" items of evidence for the Court to consider in reassessing the Motion to Dismiss: A) the Narcotic Medication Agreement; B) Dr. Wallack's September 21, 2009, Office Note; C) Report of Katelyn Hicks's Cervical MRI Study performed in Mobile, Alabama; and, D) the Affidavit of Deborah Hicks. The Court should take note that this so-called "additional evidence" has been in Plaintiff's possession since at least February of 2010. *See* Exhibit "A" attached hereto. If Plaintiff believed this to be relevant to his jurisdictional argument, it should have been used with his original opposition to the Motion to Dismiss. In any event, this "additional evidence" changes nothing in the analysis.

### A. The Narcotic Medication Agreement

Plaintiff erroneously argues that the Narcotic Medication Agreement (hereinafter "the Agreement"), attached to Plaintiff's Objection as Exhibit "A," is somehow evidence of Dr. Wallack conducting interstate commerce. Plaintiff asserts that this document created "continuing

4

obligations" on the part of Dr. Wallack to treat Katelyn Hicks and further refers to this document as being a contractual obligation between Katelyn Hicks and Dr. Wallack. Nothing could be further from truth, however.

First, Plaintiff takes various excerpts from the document out of context and adds his own language in an effort to distort the true nature of the facts and create fictitious interstate commerce where none exists consistent with his habit of misrepresenting and altering Alabama case law as demonstrated in Section I of this Response. The document's terms are quite clear, and the Court can plainly see the differences between Plaintiff's "quotes" (or, rather misquotes) contained in his Objection and the actual text of the document itself. Second, Plaintiff misunderstands the legal meaning of a contract, apparently, inasmuch as the Agreement is no such thing.

In Mississippi, "[t]he elements of a contract are '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So.3d 1155, 1158, ¶7 (Miss. 2010). The Agreement was, without question generated in the State of Mississippi and thus subject to interpretation under Mississippi law.[1] The Agreement fails to satisfy the elements of a contract for two simple reasons. First, there is no consideration. Dr. Wallack does not agree to do anything or provide anything in exchange for performance by Katelyn Hicks to provide or do anything. What the document does state, however, is that Katelyn Hicks agrees to a laundry list of conditions as part

---

[1] Nevertheless, Alabama's required elements for the formation of a contract are essentially the same: offer and acceptance, consideration, and mutual assent to terms essential to formation of a contract. *Ex Parte Grant*, 711 So.2d 464, 465 (Ala. 1997).

5

of her overall treatment, and in particular with her use of narcotic medication. Specifically, Katelyn would agree to follow the enumerated rules in managing and using her medication. Contrary to Plaintiff's assertion, Dr. Wallack did not "order" Katelyn to fill prescriptions in Alabama or anywhere. Katelyn chose the location, but once selected, by virtue of this document, she would agree to use only her selected pharmacy for filling and refilling prescriptions. Dr. Wallack would have no interest in the location of Katelyn's chosen pharmacy. His only interest would be that she use only one pharmacy regardless of location.

Second, the element of mutual assent is also missing from the Narcotic Medication Agreement since Katelyn's signature is not on the document. Plaintiff can hardly argue that a contract exists between Katelyn Hicks and Dr. Wallack if Katelyn did not sign the document at the outset.

Thus, the Narcotic Medication Agreement is not a contract, it is not an order by Dr. Wallack that Katelyn Hicks purchase and ingest medication in the State of Alabama or anywhere else, and it is not evidence of the conduct of business in interstate commerce. It is a set of rules for patients to follow who are taking narcotic medications prescribed by Dr. Wallack to insure proper usage and patient safety. This document provides no new basis for the Court to exercise personal jurisdiction over Dr. Wallack.

### B. The September 21, 2009, Office Note and The Cervical MRI Report from Mobile Infirmary

Plaintiff next argues that the September 21, 2009, office note generated by Dr. Wallack's office evidences some further continuous obligations related to the State of Alabama. This, again, is untrue and involves yet another leap to an unsupportable and unreasonable conclusion by Plaintiff and/or his counsel while adding words to documents that are neither there nor can be

6

reasonably inferred in an effort to change the meaning of the documents to their own liking. Nowhere in the office note does Dr. Wallack order or even suggest that Katelyn Hicks undergo a cervical MRI in Alabama. What the document does state is that Dr. Wallack intended to order a cervical MRI. That procedure, of course, can be performed anywhere. This note is evidence of treatment by Dr. Wallack, but it in no way evidences treatment to be had at any particular location. Katelyn Hicks (or her family) chose the location of the MRI. The fact that Katelyn had the MRI performed in Mobile, Alabama, is more evidence of her own unilateral actions, not any actions on the part of Dr. Wallack directed at the State of Alabama. The Court should disregard Plaintiff's argument and insinuation that Dr. Wallack's stated intentions contained in the September 21, 2009, office note indicates actions directed at the State of Alabama inasmuch as this contention cannot in anyway reasonably be inferred from this note.

  Likewise, the MRI report generated by Mobile Infirmary Medical Center after personnel there performed the MRI on Katelyn Hicks adds no further support to the Plaintiff's claim. Dr. Wallack's order for the MRI is attached hereto as Exhibit "B." The order does not specify a location. It only allows Katelyn to have the MRI performed, and it is her choice (or that of her family) as to where that takes place. Again, the Hicks family (or Katelyn) unilaterally chose Mobile Infirmary. Dr. Wallack was not part of that decision-making process and cannot now be held to have subjected himself to the jurisdiction of the State of Alabama (or any other state outside Mississippi) simply by providing the Hicks family a means for Katelyn to obtain a MRI at a location of their choosing.

  Neither of these documents provides any basis for the Court to assert personal jurisdiction over Dr. Wallack. Any actions taken by Katelyn Hicks or her family with regard to

where they chose to have prescriptions filled (or where Katelyn actually ingested medication) or where they chose to have certain ordered tests performed are unilateral actions and cannot subject Dr. Wallack to the personal jurisdiction of the forum state in which Plaintiff elected to carry them out. The fact that Plaintiff chose Alabama amounts to no more than a mere fortuity. Had Plaintiff chosen to have the MRI in Pensacola, Florida, or any other state, Dr. Wallack would not be subject to personal jurisdiction there, either. The fact remains that Katelyn could just have easily had her MRI performed at Ocean Springs Hospital located just down the street from Dr. Wallack's office. Katelyn's choosing her own home town and state for fulfilling that test does not and cannot subject Dr. Wallack to personal jurisdiction there. The Court should disregard Plaintiff's argument with respect to these two documents.

### C. Affidavit of Deborah Hicks

The Affidavit of Deborah Hicks adds nothing to the personal jurisdiction analysis. It is clear from the affidavit that it was Deborah Hicks who initiated the telephone call to Dr. Wallack. He simply returned her telephone call in response thereto, and based upon Deborah Hicks's conversation with him regarding what to do about Katelyn's pain, an appointment was made for the Hicks family to bring Katelyn to Ocean Springs, Mississippi, for an epidural injection. That is hardly Dr. Wallack soliciting the Hickses. It was they who reached out to him. The affidavit and its attached Vonage telephone number printout only reaffirms the fact that Plaintiff sought out Dr. Wallack and not the other way round. Dr. Wallack is aware of no law which holds that returning a telephone call to a resident in another state subjects the returning caller personally to that state's jurisdiction. No return call would ever have been made but for the out-of-state caller initiating it in the first place as the Hickses did.

Similarly, a follow-up call from Dr. Wallack's office to check on how well Katelyn tolerated an injection would not have been necessary had the Hickses not reached across into Mississippi and sought treatment at Dr. Wallack's office in Ocean Springs. The office would have had no other way of knowing if further medical care was required or if the patient benefitted from the procedure without following with a call. That is just good medical practice. The mere fact that the call was made to an Alabama telephone number is of no consequence since that was the number provided to Dr. Wallack's office by the Hicks family. The Court should disregard this item of Plaintiff's "additional evidence" and attendant arguments in its re-evaluation of the personal jurisdiction analysis.

### D. Plaintiff's Disagreement With The Court's Analysis and Application of Law

The remainder of Plaintiff's Objection takes issue with the Court's prerogative and ability to analyze and apply case law to the facts of this case. Aside from Plaintiff's complete failure to grasp that the Court in fact did correctly apply the law to the facts of this case, Plaintiff goes further and again misrepresents the facts in flagrant disregard for the truth. There is absolutely no evidence that Dr. Wallack ordered Katelyn Hicks to fill prescriptions in Alabama. In fact, he did not order her to even fill prescriptions at all. He gave her prescriptions and where she filled them was up to her. The only condition was that she could only use one pharmacy to do it, and she had to provide the name and location of that pharmacy to Dr. Wallack. The pharmacy could have been in Oregon for all it mattered to Dr. Wallack. He just did not want Katelyn to shop around and risk her purchasing more narcotic medication than prescribed.

Hence, *Muffo v. Forsyth*, 37 Ill.App.3d 6, 345 N.E.2d 149 (1976), cited by the Court along with the multiple other decisions cited by the Court in its Report and Recommendation

9

[Doc. 19] at pp. 8-9 are certainly more analogous factually to the case at bar than the law cited by Plaintiff in support of his position.  The Court thus correctly found so and made its recommendations accordingly.  Plaintiff's argument is nothing more than disagreement with the Court's application of the law to the facts before it and offers nothing substantive to dispute the Court's prior findings.

Furthermore, the Court correctly distinguished this case from *Kennedy v. Freeman*, 919 F.2d 126 (10th Cir. 1990). [Doc. 19] at pp. 12-13.  But, Plaintiff's argument totally misses the point in his argument that ordering a cervical MRI provides a basis for the exercise of personal jurisdiction in Alabama over Dr. Wallack.  First, Dr. Wallack did not order the cervical MRI to take place in Alabama.  *See* Exhibit "B" attached hereto.  Plaintiff chose the location.  Second, ordering a MRI is not an act directed toward the forum state.  It is an authorization for a procedure.  And, third, the cervical MRI is wholly unconnected to the specific event which Plaintiff contends caused the death of Katelyn Hicks, *vis-a-vis* the alleged overdose.

As stated previously in Defendant's Reply Memorandum further supporting his Motion to Dismiss [Doc. 15], Plaintiff misapprehends Alabama's Long Arm Rule.  This very Court in *LaSalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F.Supp.2d 1293 (S.D. Ala. 2003), set out the test for determining the propriety of exercising personal jurisdiction over a non-resident defendant from both a general and specific perspective.  It is clear that general personal jurisdiction does not apply here, and Dr. Wallack will not repeat his prior arguments contained in his Reply Memorandum further supporting his Motion to Dismiss [Doc. 15] as those are available to the Court already.

With respect to specific personal jurisdiction, the Court held that a nonresident

defendant's contacts with the forum state must be such that he or she has "fair warning" that a particular activity would subject him or her to jurisdiction in that state. *Id.* at 1297. Fair warning exists where a nonresident defendant purposefully directs his or her activities at the forum and injury results. *Id.* This Court then set forth the requisite three-part test for analyzing whether specific personal jurisdiction exists:

1. The contacts must be related to the plaintiff's cause of action or have given rise to it;

2. The contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and,

3. The contacts must be such that the defendant should reasonably anticipate being haled into court in the forum.

*Id.*

Plaintiff clearly overlooks the first prong of the test. His action is based on the prescription of medication to Katelyn Hicks. That has nothing to do with ordering a cervical MRI. Likewise, Plaintiff fails to demonstrate how Dr. Wallack committed some act which purposefully availed himself of the privilege of conducting activities in Alabama. Dr. Wallack conducted no activities in Alabama and did not seek the privilege to do so with respect to Katelyn Hicks. And, lastly, Plaintiff fails to demonstrate how ordering a cervical MRI (that can be performed anywhere) would put Dr. Wallack on notice that he would be hailed into court in a foreign jurisdiction, particularly for Plaintiff's daughter's alleged overdose on medication, wholly unrelated to having a cervical MRI.

Objection number 2 should be overruled.

### III. Objection 3–The Court's Determination that Dr. Wallack Was Not Involved in Interstate Commerce

Plaintiff offers no evidence that Dr. Wallack was involved in interstate commerce in his treatment of Katelyn Hicks. For the same reasons previously addressed in this memorandum, Plaintiff's "additional evidence" adds no support to this contention. Plaintiff's resort to mischaracterizing the facts by alleging that Dr. Wallack "ordered Katelyn to undergo a cervical MRI in Alabama" and that he "ordered her to fill prescriptions in Alabama" is unacceptable and should be admonished and the arguments disregarded by the Court. The facts are plain that Dr. Wallack did not "order" Katelyn to do anything in Alabama. She and her family chose the location for both the cervical MRI and the pharmacy.

Objection 3 should be overruled.

### IV. Objection 4–The Court's Legal Analysis of Minimum Contacts

Plaintiff's fourth objection is again based upon his own mischaracterization of the facts. There is no evidence that Dr. Wallack ordered Katelyn to do anything in Alabama. He provided her with orders that would allow her to obtain a cervical MRI, but that procedure could have been performed anywhere. Katelyn and/or her family chose the location themselves. Also, Dr. Wallack did not order Katelyn to fill prescriptions in Alabama. Katelyn and her family chose the pharmacy and its location. And, lastly, Katelyn chose to take her medication in Alabama. She obviously could take her medication anywhere. The Hicks family's own unilateral actions, and in particular where they chose to carry them out, cannot, of themselves, subject Dr. Wallack to personal jurisdiction in Alabama. As such, the evidence in this case does not support a finding that Dr. Wallack directed any actions toward Alabama sufficient to establish minimum contacts.

Plaintiff's continued reliance on *Kennedy* is representative of his misapprehension (or

misrepresentation) of the true facts of this case. The Court properly distinguished *Kennedy* in its Report and Recommendation [Doc. 19], and the reality is that *Kennedy* is factually distinguishable. There is simply no evidence that Dr. Wallack solicited any member of the Hicks family, that he advertised to them or any Alabama residents, or directed any other activity toward Alabama. The Hickses sought Dr. Wallack out in Mississippi, and the relationship remained that way. Defendant would point out that Plaintiff's assertion in his Objection that the Court's finding on this issue "is without merit"[2] is both offensive and unsupported. The Court conducted a complete analysis of the applicable case law to the facts, and Plaintiff's out-of-context attempts to create personal jurisdiction out of facts that do not exist and mischaracterization of the applicable law should be rejected. Objection number 4 should be overruled.

## V. Objection 5–No Evidence that Dr. Wallack Ordered Katelyn Hicks to Fill and Ingest Prescription Narcotics in Alabama

The evidence offered by Plaintiff on this issue has been previously addressed herein. The Narcotic Medication Agreement is not a contract in the first instance. Secondly, it is clear from the document that the location of the pharmacy was hand written on the document obviously indicating that choice of pharmacy rested with the patient, not Dr. Wallack. Dr. Wallack would have no interest whatsoever in the choice of pharmacy. The stipulation was that the patient use only that one pharmacy once the patient selected it. The location is of no consequence. Thus, Plaintiff has provided the Court with no additional evidence that Dr. Wallack "ordered" Katelyn to fill prescriptions in the State of Alabama. And, third, the document is not signed by Katelyn

---

[2] Plaintiff's Obj. [Doc. 22] at p. 18.

13

or anyone in her family. The Narcotic Medication Agreement falls far short of being an "order" to fill prescriptions in Alabama.

Likewise, there is no evidence that Dr. Wallack "ordered" Katelyn to ingest medication in Alabama. It is true that Katelyn lived in Alabama, and it is reasonable to assume that she would take medication in Alabama. But, Dr. Wallack *did not require* her to do so. Katelyn could take her medication anywhere she chose, and if she chose her home in Alabama, then that would be her unilateral action. It would not be the result of some requirement of Dr. Wallack. Plaintiff's evidence misses the mark here as well. The Court previously analyzed this issue the same way in its finding that there was no evidence of a requirement, and that fact has not changed. Dr. Wallack may well have inferred that Katelyn would take her medication in Alabama; yet, that is not tantamount to a requirement from Dr. Wallack that she do so.

Objection number 5 should be overruled.

## VI. Objection 6–Transfer to Mississippi in Lieu of Dismissal

The decision whether to transfer this case to federal court in Mississippi rests solely within the discretion of the Court. Certainly, Dr. Wallack would have no objection to such a transfer, if the Court deemed it warranted, since that is where this matter should have been filed in the first place. It is puzzling why the Plaintiff is fighting so hard to stay in this Court in Alabama anyway. He has made much ado about the fact that Dr. Wallack has an Alabama medical license and that this somehow factored greatly into the decision to seek out Dr. Wallack in Mississippi. Yet, Plaintiff filed his licensure complaint against Dr. Wallack with the

Mississippi State Board of Medical Licensure,[3] not the Alabama Board of Medical Examiners & Medical Licensure Commission of Alabama. This fact alone speaks volumes to the suggestion that Plaintiff really believes this to be a Mississippi matter.

While Dr. Wallack believes this matter should be dismissed for lack of personal jurisdiction, he takes no position one way or the other as whether the Court deems it proper to transfer the case to Mississippi, particularly since it is Mississippi not Alabama that has personal jurisdiction over him.

### III. Conclusion

Plaintiff has provided the Court with no new or additional evidence capable of supporting his contention that the Court has personal jurisdiction over Dr. Wallack. Additionally, Plaintiff's Objection to the Report and Recommendation amount to nothing more than a rehash of his prior arguments and mischaracterization of the law and facts. Plaintiff offers no meritorious law or fact in support of his Objection. For the reasons set forth hereinabove, all of Plaintiff's objections enumerated and argued in the Objection should be overruled and the Court should reinstate its Report and Recommendation [Doc. 19] and grant Dr. Wallack's Motion to

---

[3] This complaint was dismissed by the Mississippi State Board of Medical Licensure on April 29, 2010. *See* Exhibit "C" attached hereto.

Dismiss for Lack of Personal Jurisdiction.

Dated March 19, 2012.                    Respectfully Submitted,

                                         BRYAN, NELSON, SCHROEDER,
                                         CASTIGLIOLA & BANAHAN, PLLC
                                         **Attorneys for Defendant,**
                                         **MATHEW C. WALLACK, M.D.**


                                         BY: s/ H. Benjamin Mullen
                                             **H. BENJAMIN MULLEN (MULLH3638)**
                                             **JESSICA B. McNEEL**

## **CERTIFICATE OF SERVICE**

      I, **H. BENJAMIN MULLEN**, one of the attorneys for the Defendant, **MATHEW C. WALLACK, M.D.**, do hereby certify that on this date, I have electronically filed the foregoing Response and Memorandum in Opposition to the Plaintiff's Statement of Objection to Magistrate Judge's Recommendation [Doc. 22] with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

      Dated this the 19th day of March, 2012.

                                       s/ H. Benjamin Mullen
                                       H. BENJAMIN MULLEN

**H. BENJAMIN MULLEN**
**AL FEDERAL BAR NO.: MULLH3638**
**JESSICA B. McNEEL**

**BRYAN, NELSON, SCHROEDER,**
**CASTIGLIOLA & BANAHAN, PLLC**
Attorneys at Law
Post Office Drawer 1529
1103 Jackson Avenue
Pascagoula, MS 39568-1529
Tel.: (228)762-6631
Fax: (228)769-6392
ben@bnscb.com
jessica@bnscb.com